# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **NICOLE PEARSON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Case No.** <u>1:26-cv-612</u> |
| **AMAZON.COM SERVICES LLC, and SUN** | § | |
| **DONG,** | § | |
| **Defendants.** | § | |
| | § | |

---

**INDEX OF MATTERS BEING FILED
AND LIST OF ALL COUNSEL OF RECORD**

---

Defendant Amazon.com Services LLC, ("Defendant") submits this Index of Matters Being Filed and List of All Counsel of Record. The following items are being filed by Defendant:

1.    Index of Matters Being Filed and List of All Counsel of Record;

2.    Copies of all executed process, pleadings asserting causes of action, and all orders signed by the state judge as follows:

      A.    Index of Matters Filed (Attached as **Exhibit 1**)

      B.    Plaintiff's Complaint, filed February 12, 2026 (attached as **Exhibit A**);

      C.    Docket Sheet (attached as **Exhibit B**)

3.    Defendant AMAZON.COM SERVICES LLC's FRCP 7.1 Disclosure Statement (attached as **Exhibit C**);

4.    A copy of the JS-44 Civil Cover Sheet (attached as **Exhibit D**);

The parties' respective attorneys are as follows:

A.      Attorney for **Plaintiff:**

       Kristopher A. Bonham, Esq.
       MORGAN & MORGAN
       8151 Peters Rd, Suite 4000
       Plantation, FL 33324
       Telephone: (561) 812-1547
       kbonham@forthepeople.com
       precious.ramosdiaz@forthepeople.com

B.      Attorneys for Defendant **Amazon.com Services LLC:**

       **SOFIA A. RAMÓN**
       sramon@ramonworthington.com; efile@ramonworthington.com
       **RAMÓN WORTHINGTON CANTU, LLC**
       1506 S. Lone Star Way, Suite 5
       Edinburg, Texas 78539
       (956) 294-4800 – Phone
       (956) 928-9564 – Fax

       **ELIZABETH SANDOVAL CANTU**
       ecantu@ramonworthington.com
       **RAMÓN WORTHINGTON CANTU, LLC**
       1506 S. Lone Star Way, Suite 5
       Edinburg, Texas 78539
       (956) 294-4800 – Phone
       (956) 928-9564 – Fax

       **STEPHEN W. BOSKY**
       sbosky@ramonworthington.com
       **RAMÓN WORTHINGTON CANTU, LLC**
       13413 Galleria Circle, Suite 120
       Bee Cave, Texas 78738
       (512) 643-6005 – Phone

Dated: March 16, 2026.

# Exhibit C

26-0368-C26

CAUSE NO. _____

| | |
|---|---|
| **NICOLE PEARSON,** | **IN THE DISTRICT COURT** |
| **Plaintiff,** | Williamson County - 26th Judicial District Court |
| v. | |
| **AMAZON.COM SERVICES, LLC, and SUN DONG** | **___ JUDICIAL DISTRICT** |
| **Defendants.** | **WILLIAMSON COUNTY, TEXAS** |

## <u>COMPLAINT</u>

 Plaintiff, Nicole Pearson, sues Amazon.com Services, LLC, and SUN DONG for the causes of actions stated herein. In support there of Plaintiff states:

## <u>INTRODUCTION</u>

 1. This products liability case centers around a defective KIZZBY Fire Pit (the "Subject Fire Pit") that severely burned Nicole Pearson on February 12, 2024. The Subject Fire Pit was developed by an "e commerce entrepreneur" using a design that relies on rubbing alcohol as fuel and omits flame arrestors or similar safeguards. Without those protective features, these types of fire pits are vulnerable to "flame jetting," where vaporized fuel can erupt violently. This hazard has long been associated with severe burns and deaths, prompting warnings from safety advocates and regulators. Fire pits of this design type violate voluntary safety standard ASTM F3363-19. According to the United States Consumer Product Safety Commission, fire pits of this design type have been responsible for two deaths and at least 60 injuries since 2019.[1]

---

[1] https://www.cpsc.gov/Warnings/2025/Consumer-Alert-Stop-Using-Alcohol-or-Other-Liquid-Burning-Fire-Pits-That-Violate-Voluntary-Standards-and-Present-Flame-Jetting-and-Fire-Hazards-Two-Deaths-and-Dozens-of-Serious-Burn-Injuries-Reported#:~:text=Consumers%20should%20immediately%20stop%20using,December%2019%2C%202024 (.

Copy from re:SearchTX

2.      The Subject Fire Pit was marketed, manufactured and sold by Defendant Sun Dong directly to residents in the State of Texas through Amazon.com Services LLC's ("Amazon") platform.

3.      Amazon undertook to provide services to Plaintiff and for the benefit of Plaintiff by ensuring products marketed on Amazon met accepted industry standards. Amazon undertook to provide services they knew were essential to protect the safety of consumers to prevent violative products from reaching its customers. Amazon advertised that products sold on Amazon were subject to safety investigations, monitoring and assessments to ensure that violative products like the Subject Fire Pit would not reach consumers and end users through the Amazon platform. Amazon induced consumers to use its platform by affirmatively representing to consumers that products on Amazon would meet accepted safety standards, and/or that violative products would be removed through proactive safety monitoring. Plaintiff relied on these promises and had no reason to expect Amazon would allow a product that violated accepted safety standards would be sold on Amazon, especially well after Amazon was aware of the violative nature of the product.

4.      In this lawsuit, Plaintiff sues Sun Dong and Amazon for their role in causing the extensive, permanent and life-long injuries sustained due to the defective and violative nature of the Subject Fire Pit.

**PARTIES, JURISDICTION, & VENUE**

5.      Mrs. Pearson is, and at all relevant times has been, a resident of Texas.

6.      The incident, injury and substantial part of the events or omissions described below that gave rise to the instant action occurred in Williamson County, Texas. Therefore, venue is proper in Williamson County, Texas.

Copy from re:SearchTX

7.    Defendant Amazon.com Services, LLC ("Amazon Services") is a foreign limited liability company organized under the laws of Delaware with its sole member Amazon.com Inc a Delaware corporation headquartered in Washington State. Amazon Services is registered to conduct business in Texas and regularly does conduct business in Texas, including by marketing, promoting, and distributing products to Texans and performing safety analysis, investigations and other services for the benefit and safety of Texans. Amazon Services may be served with process through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas, 78701.

8.    This Court is authorized under Texas law to exercise personal jurisdiction over the foreign Defendant Amazon pursuant to the Texas long arm statute because the claims stated herein arise out of Amazon:

   a.   Operating, conducting, engaging in, or carrying on a business or business venture in Texas or having an office or agency in Texas;

   b.   Committing a tortious act within Texas; or

   c.   Causing injury to persons or property within Texas arising out of an act or omission committed outside Texas where, at or about the time of the injury, either (i) Amazon was engaged in solicitation or service activities within Texas, or (ii) products, materials, or things processed, serviced, or manufactured or distributed by Amazon anywhere were used or consumed in Texas in the ordinary course of commerce, trade, or use.

9.    Further Amazon specifically marketed and distributed KIZZBY Fire Pits ("KIZZBY") on its platform and provided defective safety investigations regarding the safety of the Subject Fire Pit that failed to properly identify the violative nature of the Subject Fire Pit.

Copy from re:SearchTX

Amazon built through its marketing and advertising within Texas, reliance from Texans on the fact that Amazon was proactively investigating safety issues to prevent dangerous products from reaching end users. Through these actions, Amazon cultivated a market for its products within Texas, and this cause of action directly arises out of its cultivation of the Texas marketplace in that Amazon distributed and facilitated the Subject Fire Pit which caused injury in Texas. As such, Amazon is subject to this Court's jurisdiction.

10.     Defendant Sun Dong is a Chinese registered entity that manufactured, marketed and sold the Subject Fire Pit through Amazon.com. Defendant Sun Dong may be served with process through its attorney Kevin O'Keefe at 500 Market Street, Suite 16B, Portsmouth, New Hampshire 03801. Alternatively, Sun Dong may be served through the Hague Convention.

11.     This Court is authorized under Texas law to exercise personal jurisdiction over the foreign Defendant Sun Dong pursuant to the Texas long arm statute because the claims stated herein arise out of Sun Dong:

     a.  Operating, conducting, engaging in, or carrying on a business or business venture in Texas or having an office or agency in Texas;

     b.  Committing a tortious act within Texas; or

     c.  Causing injury to persons or property within Texas arising out of an act or omission committed outside Texas where, at or about the time of the injury, either (i) Sun Dong was engaged in solicitation or service activities within Texas, or (ii) products, materials, or things processed, serviced, or manufactured or distributed by Sun Dong anywhere were used or consumed in Texas in the ordinary course of commerce, trade, or use.

4

Copy from re:SearchTX

12.    Further, Sun Dong specifically marketed and distributed KIZZBY Fire Pits ("KIZZBY") on the Amazon platform. In doing so, Sun Dong directly sold the Subject Fire Pit to consumers in Texas and purposefully availed itself of Texas law. As such, Sun Dong is subject to this Court's jurisdiction.

## AMAZON'S NEGLIGENT SAFETY SERVICES

13.    Under Texas law, Amazon is not a seller. *See Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 112 (Tex. 2021). However, Amazon is a service provider and as a service providers can be held liable for negligence, gross negligence, negligent undertaking and violations of the Deceptive Trade Practices Act.

14.    Since its inception, Amazon has substantially changed its business model and the Amazon that exists today plays a direct role in monitoring safety, investigating safety incidents, responding to safety incidents through corrective action, directly warning consumers of safety issues and performing critical safety functions. All of this safety conduct has evolved as Amazon became heavily dependent on foreign sellers to market off-brand or micro-brands of consumer products that Amazon needed to present as safe or equivalent to the brand names Americans trusted to ensure consumers would purchases these products. As such, the Amazon that exists today is far different than the Amazon that existed in 2018 when 19 month old E.G. in the *McMillian* case ingested the lithium battery sold through Amazon in 2017.

15.    As *McMillian* itself explains, Amazon began in the 1990s selling books directly before transforming the retail market through its innovative market place facilitator business model. Amazon's profitability relies on enabling Chinese entities to sell directly to U.S. consumers. At present, over 50% of Amazon's seller base is made up of Chinese based sellers.

5

Copy from re:SearchTX

16.     The reliance on third party sellers could not have occurred without Amazon's push to market these off-brand products by promising to protect consumers from unsafe products. Amazon's has spent the last decade actively convincing United States consumers, including specifically Texans, that products sold on Amazon.com through these Chinese entities are safe, vetted, compliant and certified through independent testing facilities.

17.     In 2018, Amazon signed the EU Product Safety Pledge which was a commitment to "meant to facilitate the exchange of information and timely coordinated action for the takedown of unsafe products."[2] In doing so Amazon first began promising to the public to prevent and protect them from unsafe products by precluding unsafe products from being marketed on Amazon.com:

> Amazon strives to be Earth's most customer-centric company, where people can find and discover the widest possible selection of safe goods. In the event that a concern arises or we learn of a recall, we move quickly to protect customers and work directly with sellers, manufacturers, brands, and government agencies to identify, remove, and appropriately dispose of these products, preventing possible harm to our customers. Our objective is to block any unsafe product from getting into the hands of customers by building powerful tools to continuously monitor and proactively remove any non-compliant products from our catalogue, using both automated and expert human reviews.[3]

18.     Amazon directly pushes the message that it looks after consumer's safety to distinguish itself from Chinese competitors such as Alibaba and Temu and to present itself as providing the same quality products consumers can purchase at traditional retailers. Amazon's website states "[o]ur Product Safety Team proactively investigates and addresses reported safety complaints and incidents to ensure customer protection from potential product-related safety risks."

19.     Amazon also informs consumers "We monitor the products sold on our website for product safety concerns. In concerning situations, we may do the following: Remove the product

---

[2] Our commitment to product safety in Europe: Product Safety Pledge+
[3] *See id.*

6

Copy from re:SearchTX

from the website; Contact sellers and manufacturers for more information. Put warnings on the product detail page. Take other actions depending on the situation. Report product safety concerns to relevant government agencies. This will strengthen their safety data and help with any necessary recalls."

20.    Amazon states that "[o]ur Product Safety Team investigates and acts on reported safety complaints and incidents to protect customers from risks of injury related to products sold on Amazon.com."

21.    Amazon does this to present itself with the same level of trust one would have in an actual retailer seller, while maintaining its status as a marketplace facilitator as an end around to avoid being held accountable for the products sold on Amazon.com. However, in doing so, Amazon has effectively assumed a role to conduct safety assessments on behalf of its customers into the safety of products sold by its Chinese sellers.

22.    The central component of Amazon's safety regime is the "Magnum PI" software that effectively filters every review on Amazon searching for product safety complaints which are fed to a team of product safety investigators based in Washington state. However, unlike Tom Selleck, the investigative service provided by Amazon is entirely defective carried out and actually inhibits the ordinary flow of product safety complaints to manufacturers to allow the manufacturers to promptly address concerns in the field.

23.    Like consumers, Amazon's Chinese sellers and manufacturer's are themselve's entirely dependent on Amazon's safety regime, because unlike Amazon, these sellers and manufacturers are not warned or informed about serious and catastrophic injuries reported to Amazon. Instead, Amazon does not even inform these sellers that safety complaints are made or that investigations into their products safety have been initiated. Like consumers, Amazon's own

7

Copy from re:SearchTX

sellers are left entirely in the dark about safety issues that Amazon has identified and investigated with respect to the millions of products they facilitate.

24.     This regime increases the danger to consumers as demonstrated specifically in this case, and in the aggregate because Amazon's roadblock between the flow of safety information from consumers to manufacturers funnels this safety information to a bottomless pit in the ethers of the Magnum PI system that uses crude decision trees to determine which safety issues are worth Amazon's attention. While Amazon justifies its decision tree on the basis that millions of products are sold on Amazon.com, that is exactly why informing the sellers and manufacturers of these issues to allow them to perform their traditional function of safety reviews is critical to safety, rather than lumping all of these issues into the databases of a corporate giant in Seattle that lacks any ability to properly address the risks at issue. Amazon's Magnum PI service is simply set up for failure and the only time products can be expected to be removed is when the worst of the worst outcome repeatedly occurs.

25.     In practice, the vast majority of Amazon's safety investigations are entirely defective as they do not actually verify that the testing provided to Amazon is not fraudulent, that the product complies with Amazon's own product standards including that of the CPSC that Amazon has incorporated into its own standards, and/or that the extent of the consumer's injuries. Nor does this information get to the seller for them to perform this due diligence.

26.     Thus, while Amazon represents and promises to consumers that they can trust Amazon to directly look out for their safety, Amazon is well aware that these are hollow misleading statements that do not actually reflect the services they are actually providing. These misleading and fraudulent representations directly violate the Texas Deceptive Trade Practices Act and constitute negligence, negligent undertaking and gross negligence.

Copy from re:SearchTX

27.     This case is a clear example of Amazon's broken promises, false and misleading statements, and defective services.  Sun Dong and others flooded the Amazon market with a concrete firepit fueled using 91% isopropyl alcohol (a/k/a rubbing alcohol) as a fuel. These table top fire pits were marketed and sold the following Kizzby Fire Pit and Amazon brand 91% isopropyl alcohol to Mrs. Pearson as part of the same order:



28.     But this idea was flawed from the outset— Amazon knew or should have known of the dangerous hazards posed by the product. Instead, Amazon worked to promote the product.

29. The Kizzby Fire Pit's rise to dominance in the marketplace was made possible by tapping into Amazon's name-recognition, goodwill, distribution network, and market presence. For a time, Amazon's own website acknowledges and the safety of Kizzby Fire Pit's rise to market dominance, artificially boosting Kizzby's results against other firepits with less affilation to Amazon.

30.     On this point, Amazon boasted that its "Prime" branding "gives a company like Kizzby the credibility it needs to build trust" with customers—in other words, the "Amazon" and "Prime.

31.     Indeed, Amazon itself extensively promoted the product, including paying influencers to natively market the Kizzby Firepit using the hashtag (#) "amazonfinds", "amazondealoftheday", "amazonhome", "amazonmusthaves", which helped fuel sales of the Kizzby Firepit on Amazon.

Copy from re:SearchTX



32.    The customer trust generated through the Amazon's marketing program and is part of the customer goodwill Amazon works hard to cultivate and maintain as part of its branding and marketing efforts.

33.    Amazon expends great effort to convince consumers that the products it sells are safe and suitable for their intended uses such that customers feel safe buying products associated with Amazon and sold on Amazon's website, apps, and other platforms.

10

Copy from re:SearchTX

34.    Amazon cultivates customer goodwill and trust in the safety and efficacy of its products in various ways, including by:

a.    Creating, operating, and promoting its "Product Safety Team" which "investigates and addresses reported safety complaints and incidents to ensure consumer protection from potential product-related safety risks." Indeed, Amazon specifically represents to consumers that its Product Safety Team tracks, logs, and investigates safety complaints and incidents, and takes remedial action when hazards are detected.[4]

b.    Publicly proclaiming—on its "Preventing Unsafe Products in Our Store" webpage—that it "work[s] hard to ensure every product available in our store is safe" and that its teams and technology "detect and prevent product-safety risks."[5]

c.    Providing a dedicated "Your Recalls and Product Safety Alerts" dashboard that lets customers identify recalls tied to their past orders and receive direct safety notifications.

d.    Reserving unilateral authority—under Section S-7 of the Amazon Services Business Solutions Agreement—to "determine the content, appearance, [and] design" of any product detail page and to remove or modify listings it deems non-compliant or unsafe.

---

[4] Amazon.com, "Recalls and Product Safety Alerts," available at https://www.amazon.com/product-safety-alerts?ref_=footer_bsx_ypsa.
[5] Amazon.com, "Preventing Unsafe Products in Our Stores," available at https://trustworthyshopping.aboutamazon.com/focus/product-safety

Copy from re:SearchTX

e.  Maintaining stop-sale and market-withdrawal policies that immediately suppress or ban products "identified as potentially defective or unsafe," and enforcing a hazardous-items list that permanently blocks known dangerous goods.

f.  Promulgating and enforcing its own Frustration-Free Packaging ("FFP") and Ships-in-Own-Container ("SIOC") design standards, which require vendors to redesign packaging to meet Amazon's specifications, pass certain testing requirements (e.g., ISTA-6 testing), and pay fees to the extent the vendors fail to comply with such requirements.

g.  Requiring that manufacturers comply with Amazon's safety standards and requirements, including but not limited to those contained in Amazon's Supplier Quality Assurance Program Manual and Supply-Chain Standards Manual.

h.  Reserving the right to mandate and approve "Amazon-driven changes to product specifications that affect suppliers," and to reject or relabel any product that deviates from those specifications, thereby exercising design-level authority over the goods it allows into its supply chain.

i.  Controlling and resolving complaints made by consumers concerning the products sold on the Amazon website, apps, and other platforms, including by issuing refunds for products which are defective and pose a safety risk.

j.  Reserving the right to require that third-party laboratory test reports that meet or exceed legal requirements be provided before a product can be sold on Amazon and to prevent the delisting of products already sold on Amazon.

Copy from re:SearchTX

35.     By voluntarily adopting and publicizing these safety programs, policies, and regulatory commitments, Amazon affirmatively undertook a duty to monitor the safety of products sold through its platform, to warn consumers of known hazards, and to remove or modify listings for dangerous products—thereby assuming responsibilities traditionally borne by manufacturers, distributors, and retailers.

36.     In short: Amazon knows that its name and branding is intended to present products in a manner that consumers feel that the products purchased through Amazon are safe, reputable, and built in accordance with industry standards. But, as described above, the reality is that Kizzby Fire Pits fell well below industry standards by employing a design known to be dangerous and to have caused injuries without employing any of the necessary safeguards to prevent or mitigate that known danger. This danger was further magnified by the fact that Amazon sold its own Amazon-brand 91% isopropyl alcohol alongside the Kizzby Fire Pits, as occurred in this case

37.     This is so because Health Canada (the Canadian equivalent of the U.S. Consumer Product Safey Commission "CPSC") had strongly warned "of the serious fire and burn risks associated with flame jetting occurrences that may result from the use of certain containers of pourable alcohol-based fuels and certain firepots that use those fuels."[6] The Agency further explained:

> Based on incident reports received by Health Canada, flame jetting may occur when refueling a lit firepot, which can result in burn injuries ranging from minor to fatal. A flame jetting incident occurs very quickly when fuel is poured into a firepot that is still burning or hot. The flame or hot firepot ignites the fuel vapours around the pouring fuel stream and the flame then travels up the fuel stream and into the fuel container. This can result in a burst of flaming fuel being

---

[6] Health Canada warns Canadians of health and safety risks of certain containers of pourable alcohol-based fuels and certain firepits that use pourable fuels, https://recalls-rappels.canada.ca/en/alert-recall/health-canada-warns-canadians-health-and-safety-risks-certain-containers-pourable (Oct. 19, 2019).

Copy from re:SearchTX

violently expelled out of the container onto the user and nearby people or objects.

A flame jetting occurrence is unexpected and occurs in a fraction of a second, making it impossible for the user and/or bystanders to react quickly enough to move away from a flame jet. Flame jetting incidents often involve multiple victims and, in Canada, have resulted in fatalities and very serious injuries.[7]

38.    The Agency further cautioned that "these products should not be used in the absence of important safety features."[8] The Agency explained that an example of such a safety feature is a "flame arrestor" which "resembles a screen that is built into the container opening," and "allows the liquid to flow out and reduces the chance that a flame can travel into the container and cause a flame jetting occurrence."[9]

39.    Amazon itself received repeated complaints through its Magnum PI software of serious burn injuries caused by the thousands of table top fire pits that used pourable alcohol-based fuels and presented a clear flame jet hazard.

40.    Amazon has and had the power to entirely restrict the sale of this class of products at a moments notice by suppressing the ASIN's of every seller who marketed table top fire pits that used pourable alcohol-based fuels. Amazon knew prior to the Subject Fire Pit being marketed on its website that this risk existed and that these products were unsafe. Amazon knew exactly what the proper course of conduct to fulfil its promise to protect consumers should have been, however, through their own negligence directly took improper, unacceptable steps to remove only those fire pits that the CPSC has demanded be recalled. Amazon was well aware that the non-

---

[7] *Id.*
[8] *Id.*
[9] *Id.*

Copy from re:SearchTX

recalled fire pits shared the same defective condition and posed identical risks to end users and simply ignored this class-wide defect.

41.    A clear example of Amazon's control of the marketplace is seen in the removal of water beads from the Amazon martket place. Water beads were a popular item sold on Amazon.com comprised of small polymer spheres that expanded when placed in water. These beads generated a choking risk to children. After reviewing the reports of child deaths, Amazon unilaterally chose to remove the sale of these products from Amazon.com despite the fact that no voluntary or regulatory requirements existed for the products that Amazon found were proven to hold a high safety risk to children.

42.    Amazon's software allows it to suppress the ASIN for an entire class of violative products with ease as Amazon can with the press of a button immediately terminate the sale of products of a specific subset of a product class.

43.    Amazon also has the ability, and does, highlight certain classes of products that pose a risk to ensure that such products are vetted through independent laboratory testing to meet the voluntary and/or mandatory industry standards that Amazon's own policies incorporate as part of their product safety promises regime to promote the fact that users can trust the products on Amazon.com are safe.

44.    In prior instances, Amazon has found that third party testing provided to it from Chinese sellers were based on fraudulent documents that purported to show an untested product had been verified by a third party testing provider. To curb the fraudulent practices of its Chinese sellers, Amazon, for certain products only, required that its sellers of these products would be required to secure delivery of test data directly from the third party independent testing facility to Amazon.com. Nevertheless, Amazon has failed to require this for all products knowing full well

15

Copy from re:SearchTX

that there are countless Chinese sellers providing them with fraudulent testing data to allow the sale of untested products on Amazon.com.

45.     Turning to the Subject Fire Pit, because Amazon is required by CPSC to recall products that are recalled by CPSC, Amazon recalled certain table top fire pits subject to CPSC recalls before and after the purchase of the Subject Fire Pit. However, because the Subject Table Top Fire Pit was merely one of several either identical or substantially similar table top fire pits that used alcohol based fuel that created the exact hazard that led to the recall of the specific models of the CPSC, this specific model was not recalled by Amazon.com. Nevertheless, Amazon was well aware that that this, like the water beads it recalled previously, suffered from a class-wide defective condition that posed a direct unreasonable risk of catastrophic harm to consumers.

46.     Instead of suppressing the ASINs for all of the class, Amazon chose to simply ignore the class-wide risk and suppress only those which were subject to the CPSC recalls. The end result was exactly what Amazon knew would occur, violative products that were functionally identical to those that were recalled continued to be sold, end users continued to be unaware of the risks and end users, including Plaintiff, suffered life-altering severe burn injuries.

47.     While Amazon may be a service provider under Texas law, Amazon can plainly be sued for violating the general duty to act with due care to avoid foreseeable injuries to the public through the services that they provide. Amazon is also liable for negligently undertaking to protect Plaintiff from dangerous products.

48.     Amazon was well aware of what actions should have been taken. Amazon was well aware that this dangerous and defective product existed on its platform and that it was in the sole position to remove the product and warn consumers of the risks that Amazon was aware existed. Amazon was aware that their failure would break the promises they made to consumers to further

16

Copy from re:SearchTX

the sale of products on Amazon.com that such products were safe and Amazon was proactively addressing safety issues known to Amazon to protect consumers from dangerous products like the Subject Fire Pit.

## **THE INCIDENT**

49.    Mrs. Pearson received the KIZZBY Fire Pit and from Amazon.com on or about December 2023.

50.    In the evening of February 12, 2024, Mrs. Pearson was working in her home office with the Kizzby Fire Pit on her desk. Because it was a chilly day, Ms. Pearson used her Fire Pit throughout the day, lighting it at 11:00 am, 2:00 pm, and 5:30 pm. At 5:30 pm, the fire died out, and after 20 minutes had passed, she went to relight it as they had done before, using 91% isopropyl alcohol. But this time disaster struck: a giant fireball erupted and covered Mrs. Pearson in flames.

51.    Mrs. Pearson was subsequently taken to the emergency room, where she was diagnosed as having suffered partial-thickness burns to her chest, stomach, face, lips, and upper extremities, corneal abrasion, and was placed on a ventilator due to acute impairment of respiratory failure.

52.    In addition to physical plain, scarring, and disfigurement, Mrs. Pearson suffered great trauma because of the fire, resulting in continuing severe emotional distress.

## **AMAZON'S CONTRACT PROVISIONS DISCLAIMING LIABILITY ARE VOID UNDER WASHINGTON LAW**

53.    Plaintiff expects that Amazon will contend that it waived all liability in its Terms and Conditions for the sale of this product. The problem is that Amazon's Terms and Conditions must be constructed under Washington law which invalidates these contract defenses.

54.    For example, Amazon has used its terms and conditions outside of Washington to seek dismissal from claims filed in Massachusetts under Massachusetts law despite the fact that

Copy from re:SearchTX

Amazon's contract selects Washington law as the governing law. *See Mariah WEBER, Individually and Parent of Eve DeCosta, Minor, Plaintiff, v. AMAZON.COM SERVICES, LLC, Chengduyuantongkai Shangmaoyouxiangongsi, Defendant.*, 2025 WL 2632139 (D.Mass.) ("Amazon's Conditions of Use preclude express warranties. The Conditions say: "To the full extent permissible by law, Amazon disclaims all warranties, express or implied"). Thus, while these contract disclaimers are void under the Washington Products Liability Act, Amazon advances Washington law based contract provisions under foreign law to seek to preclude liability outside of Washington.

55.     Thus, Plaintiff anticipates Amazon will claim that its contract defenses void liability in Texas, despite the fact that these contract defenses are entirely void under the choice of law that Amazon itself provided in the Terms and Conditions.

56.     In this respect, the Supreme Court of Texas in *McMillian's* ruling exists under a false predicate. For example, the Court found that "[a]ccording to the website's "Conditions of Use," to which all customers must agree when making a purchase, Amazon makes no warranties for products "sold by" third-party merchants and disclaims responsibility for third-party product descriptions." *See Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 104 (Tex. 2021). However, no challenge was ever made as to the enforceability of those provisions under Washington law.

57.     This Court must apply Washington law to the contract defenses at a minimum and these defenses are unenforceable under Washington law. Specifically, the Washington Products Liability Act precludes these waivers as does Washington common law.

58.     Further, because the Washington Products Liability Act is hopelessly intertwined with these contract defenses, to the extent Amazon relies on them in this case, Plaintiff pleads a strict liability count under Washington law in this action.

Copy from re:SearchTX

59.     Multiple Washington Courts have concluded that Washington law applies to the underlying tort claims under such agreements in other contexts. *See Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 996 (W.D. Wash. 2022); *Napoleon v. Amazon.com, Inc.*, No. 2:24-CV-186-BJR, 2024 WL 3652873, at *2 (W.D. Wash. Aug. 5, 2024); *Romero v. Amazon.com Inc.*, No. C25-548 JNW, 2025 WL 2409943, at *2 (W.D. Wash. Aug. 20, 2025); *Wiseley v. Amazon.com, Inc.*, 709 Fed. Appx. 862, 863 (9th Cir. 2017).

60.     Thus, this Court should preclude Amazon's use of its terms and conditions as a sword and a shield. Given the Washington Products Liability Act voids these provisions, if Amazon attempts to use them as a sword here, the end result must be that Washington law applies to the underlying torts.

## COUNT I: NEGLIGNECE
### (against Amazon)

61.     Plaintiff incorporates by reference paragraphs 1-60 above as if fully set forth herein and further allege as follows.

62.     At all relevant times, the Amazon was in the business of marketing, promoting, distributing, warrantying, servicing and providing warnings for products sold through the Amazon website or using Amazon services, including KIZZBY Fire Pits and the subject Fire Pit that burned Mrs. Pearson.

63.     At all relevant times, the Amazon had or assumed through an undertaking a duty of care to their customers and the general public, including Mrs. Pearson, to market, promote, warranty, distribute, and sell products that are safe for their expected use, and to ensure that the necessary warnings and instructions are properly, clearly, and timely provided for those products in relation to the foreseeable dangers associated with same. To the extent the Amazon Defendants

19

did not owe any such duties as a matter of law, they undertook and assumed same by virtue of their conduct.

64.    Amazon was well aware that due to its own conduct to position itself as the gatekeeper of safety within the Amazon supply chain, consumers were forced to rely on Amazon's safety investigation and practices would be reasonably carried out by Amazon to ensure dangerous products did not reach the marketplace, were removed from the marketplace, or that warnings regarding known hazards were provided to end users.

65.    Amazon breached its duty of care to Mrs. Pearson by:

a.    Failing to conduct or ensure adequate pre-market testing, risk analyses, and engineering evaluations to identify the flame-jetting hazard inherent in alcohol-fueled tabletop fire pits before releasing the product to consumers;

b.    Failing to address known safety hazards with the Subject Fire Pit, the class of table top fire pits that shared the flame-jetting hazard, despite undertaking to investigate complaints from its customers who had been burned or injured by such products.

c.    Failing to require the incorporation of readily available safer alternative designs—including integrated flame-arrestor mesh, self-extinguishing lids, and fuel-canister isolation chambers—that would have eliminated or substantially reduced the risk of violent fuel eruptions;

d.    Marketing, promoting, distributing, and providing safety services with respect to the subject Fire Pit in an unreasonable manner in that it knew or should have known increased the risk of harm to consumers;

Copy from re:SearchTX

e.  Implementing a safety review process that unreasonably and negligently thwarted manufacturers and sellers from having knowledge of the safety complaints about these products made to Amazon.com and thereby precluding manufacturers from adequately addressing these risks by stifling the knowledge that such complaints and injuries were occurring.

f.  After being aware of such injuries failing to vet third party testing that was either not carried out or did not occur, which would have established the violative nature of the Subject Fire Pit.

g.  Failing to require the KIZZBY Fire Pit was supplied with crucial auxiliary safeguards, such as flame-arrestor screens or other flame-suppression devices, that would have substantially reduced the risk of flame-jetting eruptions and attendant burn injuries;

h.  Continuing to allow and furthering the marketing, advertising, and facilitation of the KIZZBY Fire Pit after receiving incident reports, consumer complaints, and regulatory warnings concerning flame-jetting injuries associated with the same and similar products;

i.  Failing to provide warnings, at any point in time, regarding the dangers posed by the fire pit design and its propensity to cause burn injuries such as those suffered by Mrs. Pearson;

j.  Failing to provide necessary warnings and instructions, including with respect to the need to use proper safeguards to prevent burn injuries, such as fuel arrestors and other devices which can prevent or mitigate against flame jetting;

21

Copy from re:SearchTX

k.  Failing to provide clear, conspicuous, and comprehensive warnings and instructions regarding safe refueling practices, proper fuel quantities, and the need to keep a safe distance from the flame;

l.  Failing to properly execute the voluntarily-undertaken post-sale monitoring, incident-tracking, and/or corrective-action programs to identify, analyze, and remedy the unreasonable risk of burn injuries associated with the product's design;

m.  Failing to timely report the known hazard to the U.S. Consumer Product Safety Commission and to initiate an effective recall until long after Mrs. Pearson's injuries; and

n.  Unduly delaying a comprehensive recall and corrective-action campaign—even after accumulating sufficient incident data and hazard analyses to confirm the product's unreasonable risk—thereby prolonging consumer exposure to flame-jetting dangers and directly contributing to the severity of Mrs. Pearson's injuries.

66.  Amazon knew or should have known that exposing consumers to the dangerous and defective conditions existing in the KIZZBY Fire Pit would give rise to serious bodily injuries.

67.  By consolidating the safety investigation process in house, Amazon knew or should have known consumers, including Plaintiff, relied on Amazon's safety regime and were forced to rely on Amazon's safety regime. Amazon negligently carried out these safety investigations increasing the risk of harm that risks would continue to go unmitigated and unaddressed by the sellers and manufacturers who Amazon prevented from being informed of the problems occurring and the investigations Amazon initiated into those safety complaints.

22

Copy from re:SearchTX

68.    Had Amazon acted reasonably, it would have been well aware that the dangerous and violative product did not meet accepted safety standards that Amazon promises consumers its products would meet. .

69.    Amazon's negligent acts were a proximate cause of Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Amazon.com, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, loss of consortium, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT II: STRICT LIABILITY/BREACH OF WARRANTY
### (against Amazon)
### Applying Washington Law

70.    Plaintiff incorporates by reference paragraphs 1-60 above as if fully set forth herein and further allege as follows.

71.    As stated above, Amazon's contractual defenses are void under the Washington Products Liability Act, which hopelessly intertwines with the underlying tort claims in this case.

72.    Under the Washington Products Liability Act Amazon is liable for its own negligence and breaches of warranty. Moreover, the WPLA abolishes any privity requirement. Wash. Rev. Code § 7.72.010(5).

73.    As set forth above the Subject Fire Pit was not safe, was unfit, was not free from defects and was not of merchantable quality for the reasons stated above.

23

Copy from re:SearchTX

74.     Subject charger was expected to, and did, reach Plaintiff without undergoing any substantial changes or alterations to the condition in which it was sold to Plaintiff by Amazon.

75.     At all relevant times, the Amazon was in the business of marketing, promoting, distributing, warrantying, selling, and providing warnings for products sold through the Amazon website or using Amazon services, including Kizzby Fire Pits and the subject Fire Pit that burned Mrs. Pearson.

76.     At all relevant times, Defendants expressly and impliedly warranted to users, customers, and the public, including Mrs. Pearson, that the subject Fire Pit was safe, defect- free, and merchantable and fit for the purpose for which it was ordinarily used or for any other reasonably foreseeable purpose.

77.     Mrs. Pearson relied upon Defendants' express and implied warranties when purchasing and using the subject Fire Pit.

78.     Each of the Defendants breached their express and implied warranties made to Mrs. Pearson in that the subject Fire Pit:

a.  Was sold in an unreasonably and dangerous condition such that it had a propensity to cause severe burn injuries such as those suffered by Mrs. Pearson;

b.  Failed to incorporate readily available safer alternative designs—including integrated flame-arrestor mesh, self-extinguishing lids, and fuel-canister isolation chambers—that would have eliminated or substantially reduced the risk of violent fuel eruptions;

c.  Lacked crucial auxiliary safeguards, such as flame-arrestor screens or other flame-suppression devices, that would have substantially reduced the risk of flame-jetting eruptions and attendant burn injuries; and

24

Copy from re:SearchTX

     d.   Lacked warnings or instructions regarding its dangerous propensity to cause burn injuries and the necessary safeguards and protocols to follow to mitigate the burn hazard posed by the subject Fire Pit.

79.     Mrs. Pearson, as someone who purchased, used, and was exposed to the subject Fire Pit, was a person who would be foreseeably injured by the breach of the express and implied warranties referenced in this Count.

80.     Amazon's acts and omissions were a proximate cause of Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Amazon.com, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, loss of consortium, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT III: GROSS NEGLIGENCE
### (against Amazon)

81.     All prior paragraphs of this Complaint are realleged as if fully restated here.

82.     Amazon knew or reasonably should have known that the Kizzby Fire Pits would probably cause injury to the purchasers thereof, but in conscious disregard of consumer safety (or with reckless indifference to the consequences of which they were aware), the Amazon Defendants continued to market, warrant, distribute, and sell Kizzby Fire Pits to the consuming public, including Plaintiff. *See supra* ¶¶ 2-7, 21-23, 34, 45, 46.

Copy from re:SearchTX

83.     Amazon knew or reasonably should have known that the Amazon brand 91% isopropyl alcohol would probably cause injury to the purchasers thereof, but in conscious disregard of consumer safety (or with reckless indifference to the consequences of which they were aware), the Amazon Defendants continued to market, warrant, distribute, and sell the Amazon brand 91% isopropyl to the consuming public, including Plaintiff. *See supra* ¶¶ 2-7, 21-23, 34, 36, 45, 46.

84.     Amazon's acts and omissions were carried out willfully and/or recklessly with the foreseeable expectation that this exact type of injury would occur.

85.     Each of the foregoing negligent acts and/or omissions was a direct and proximate cause of the flame jetting incident which is the subject of this Complaint.

86.     When considering all of these facts and circumstances in combination, each of the Defendants' egregious misconduct with regard to the safety of the consuming public (including Plaintiff) justifies an award of punitive damages under the common law to both punish and deter the Defendants (and to deter others as well) from engaging in such wrongful behavior in the Texas marketplace.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Amazon.com, for punitive damages, attorney's fees, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT IV: TEXAS DECEPTIVE TRADE PRACTICES ACT
### (against Amazon.com)

87.     Plaintiff incorporates by reference paragraphs 1-60 above as if fully set forth herein and further allege as follows.

88.     As described above, Defendants violated of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). All notice and pre-suit requirements with respect to this DTPA claim against Amazon are not applicable as this case was filed to ensure the statute of

26

limitations would not bar the action. Specifically, all the Defendants violated the following sections of the DTPA:

89.    17.12: Amazon disseminated statements they knew were materially misrepresented to further the sale of the Subject Fire Pit, including specifically that Amazon was proactively monitoring products, including the Subject Fire Pit, to remove violative and dangerous products that posed a threat to the safety of consumers, when Amazon was plainly aware that it was ignoring the majority of safety concerns received from its consumers including those with respect to the Subject Fire Pit. Amazon made these material misrepresentations when contracting to sell, otherwise disposing of, or contracting to dispose of the tangible personal property, security, service, or offering the Subject Fire Pit through Amazon.com.

90.    17.46: Amazon's acts above constituted False, misleading, or deceptive acts or practices in the conduct of any trade or commerce including by:

   a.  failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

   b.  representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

   c.  causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

   d.  causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another

Copy from re:SearchTX

e.  representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not

f.  Using deception, false pretense, false promise, and/or misrepresentation in connection with a consumer transaction.

g.  Misrepresenting that the Kizzby Fire Pit had been properly and safely assembled so as not to pose an unreasonable risk or hazard during the normal use of the product;

h.  Misrepresenting that the Kizzby Fire Pit had been properly and safely inspected and tested so as not to pose an unreasonable risk or hazard during the normal use of the product;

i.  Misrepresenting that it was safe to use the Amazon brand 91% isopropyl alcohol to fuel the Kizzby Fire Pit

91.  Defendant's violations of the Deceptive Trade Practices Act were a proximate cause of Plaintiff's actual damages including Plaintiff's past and future physical injuries, economic damages, mental anguish, pain and diminished enjoyment of life.

92.  Plaintiff is entitled to attorney's fees under the DTPA.

93.  Further, these acts were committed knowingly and intentionally entitling plaintiff to treble damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant, Amazon.com, for all actual damages recoverable under the DTPA, treble damages, attorneys fees, court costs, and interest, and for any such further relief as the Court deems appropriate.

## <u>COUNT V: STRICT LIABILITY</u>

28

Copy from re:SearchTX

**(against Sun Dong)**

94.     Plaintiff incorporates by reference paragraphs 1-60 above as if fully set forth herein and further allege as follows.

95.     Sub Dong is responsible for manufacturing, designing, distributing, and selling the Subject Fire Pit and for otherwise placing the Subject Fire Pit into the stream of commerce.

96.     The Subject Fire Pit was defective in its design, manufacture, and warning.

97.     The Subject Fire Pit was susceptible to violent fuel eruptions when used in an ordinary and foreseeable manner.

98.     The propensity of the Subject Fire Pit to suffer violent fuel eruptions rendered it defective.

99.     The lack of adequate warnings or instructions provided regarding the risk of violent fuel eruptions rendered the product defective.

100.    Safer alternative designs were available to reduce or eliminate the risk of violent fuel eruptions without sacrificing any of the utility provided by the product at substantially the same cost.

101.    The Subject Fire Pit's defective conditions rendered it unreasonably dangerous for its intended and foreseeable uses.

102.    The Subject Fire Pit's defective conditions were each a proximate cause of Andrew's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Sun Dong, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic

29

Copy from re:SearchTX

damages, non-economic damages, loss of consortium, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT VI: NEGLIGENCE
### (against Sun Dong)

103.    All prior paragraphs of this Complaint are realleged as if fully restated here.

104.    Sun Dong is responsible for designing, manufacturing, and selling the Subject Fire Pit and for otherwise placing the Subject Fire Pit into the stream of commerce.

105.    As a manufacturer, Sun Dong had a duty to design and manufacture the Subject Fire Pit in a manner that left it free from any design or manufacturing defects that would cause the product to be unreasonably dangerous to users and bystanders.

106.    Sun Dong knew or should have known that due to its defective design and/or manufacture of the Subject Fire Pit, that the Subject Fire Pit was prone to violent fuel eruptions.

107.    Sun Dong knew or should have known that the propensity of the Subject Fire Pit to suffer violent fuel eruptions placed users and bystanders at an unreasonable risk of harm and rendered the Subject Fire Pit unreasonably dangerous and thereby, defective under Texas law.

108.    Alternative designs existed that would prevent spontaneous fuel eruptions and/or mitigate this type of event.

109.    Thus, Sun Dong breached its duty of care under Texas law when it placed into the stream of commerce the unreasonably dangerous Subject Fire Pit that was defective in design and/or manufacture.

110.    Additionally, Sun Dong is responsible for providing adequate warnings and instructions to intermediaries and/or end users regarding the foreseeable risks associated with the Subject Fire Pit

Copy from re:SearchTX

111.    As a manufacturer, Sun Dong had a duty to ensure that the instructions and warnings for the Subject Fire Pit were adequate.

112.    Sun Dong knew or should have known about the Subject Fire Pit's propensity to cause violent fuel eruptions.

113.    It was foreseeable to a reasonable manufacturer in Sun Dong's position that a malfunction of this type posed a substantial risk to end users and bystanders.

114.    Thus, Sun Dong had a duty to warn of the propensity violent fuel eruptions and to provide adequate instructions to intermediaries, end users and/or bystanders on how to avoid or mitigate the risk of such events.

115.    Sun Dong breached its duty to warn by providing inadequate warnings and instructions to intermediaries, end users and bystanders that failed to warn about the potential for the Subject Fire Pit to cause violent fuel eruptions

116.    Sun Dong's breach of the above duties were each a proximate cause of Andrew's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Sun Dong, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, loss of consortium, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate

## JURY DEMAND

117.    Plaintiff demands a trial by jury on all issues so triable.

## PRAYER

31

Copy from re:SearchTX

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that upon final trial of this

matter, they have and recover of and from the Defendants the following:

a.  Judgment for all of their legally recoverable damages in the amount of at least $7,000,000 as pleaded and as shown by the evidence;
b.  Pre- and post-judgment interest as allowed by law;
c.  Award of exemplary damages against the Defendants in a sum determined by the trier of fact;
d.  Reasonable and necessary attorneys' fees in prosecuting the DTPA allegations against the Defendants;
e.  Punitive damages
f.  All costs of court; and
g.  Such other and further relief, at law or in equity, to which Plaintiffs are justly entitled.


Dated: February 12, 2026                    Respectfully submitted,

                                            /s/ *Kristopher A. Bonham*
                                            **KRISTOPHER A. BONHAM, ESQ.**
                                            Texas Bar No.: 24118335
                                            **Morgan & Morgan**
                                            8151 Peters Rd Suite 4000,
                                            Plantation, FL 33324
                                            Telephone: (561) 812-1547
                                            Email: kbonham@forthepeople.com
                                            Secondary Email:
                                            precious.ramosdiaz@forthepeople.com

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kristopher Bonham on behalf of Kristopher Bonham
Bar No. 24118335
kbonham@forthepeople.com
Envelope ID: 111208437
Filing Code Description: Petition
Filing Description: Complaint-EV# 111208437 **Letter requesting for issuance needed**
Status as of 2/13/2026 8:21 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kristopher Bonham | | kbonham@forthepeople.com | 2/12/2026 4:58:38 PM | NOT SENT |

Copy from re:SearchTX

# Exhibit D

# REGISTER OF ACTIONS
## CASE NO. 26-0368-C26

| | | | |
|---|---|---|---|
| **Nicole Pearson vs. Amazon.com Services LLC and Sun Dong** | §<br>§<br>§<br>§<br>§ | Case Type:<br>Date Filed:<br>Location: | **Damage - Other Product Liability**<br>**02/12/2026** |

---

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| Defendant | **Amazon.com Services LLC** | |
| | | |
| Defendant | **Sun Dong** | Kevin O'Keefe<br>*Retained* |
| | | |
| Plaintiff | **Pearson, Nicole** | Kristopher A. Bonham, Esq.<br>*Retained*<br>561-812-1547(W) |

---

### EVENTS & ORDERS OF THE COURT

| | |
|---|---|
| | **OTHER EVENTS AND HEARINGS** |
| 02/12/2026 | **Original Petition (OCA)** |
| 02/13/2026 | **Request for Issuance** |
| 02/17/2026 | **Citation** |
| | Amazon.com Services LLC              Unserved |
| | Sun Dong                            Unserved |

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **NICOLE PEARSON,** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Case No.** <u>1:26-cv-612</u> |
| **AMAZON.COM SERVICES LLC, and SUN** | § | |
| **DONG,** | § | |
|     **Defendants.** | § | |
| | § | |

<u>**DEFENDANT AMAZON.COM SERVICES LLC'S 7.1 DISCLOSURE STATEMENT**</u>

COMES NOW Defendant Amazon.com Services LLC by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 7.1, states for its Disclosure of Corporate Interests:

Amazon.com Services LLC is a wholly owned subsidiary of Amazon.com, Inc., a publicly traded company that has no parent corporation and no publicly held corporation owns 10 percent or more of its stock.

Respectfully submitted,

**RAMÓN WORTHINGTON
CANTU, LLC**
1506 S. Lone Star Way, Suite 5
Edinburg, Texas 78539
(956) 294-4800 – Phone
(956) 928-9564 – Fax

*/s/ Sofia A. Ramón*
**SOFIA A. RAMÓN**
Fed. ID No. 20871/TSB No. 00784811
sramon@ramonworthington.com
efile@ramonworthington.com
**ATTORNEY IN CHARGE FOR
DEFENDANT AMAZON.COM
SERVICES LLC**

**OF COUNSEL:**

**ELIZABETH SANDOVAL CANTU**
Fed. ID No.310028/ TSB No. 24013455
ecantu@ramonworthington.com
1506 S. Lone Star Way, Suite 5
Edinburg, Texas 78539
(956) 294-4800 – Phone
(956) 928-9564 – Fax

**STEPHEN W. BOSKY**
Fed. ID No. 3076205/TSB No. 24087190
sbosky@ramonworthington.com
**RAMÓN WORTHINGTON CANTU, LLC**
13413 Galleria Circle, Suite 120
Bee Cave, Texas 78738
(512) 643-6005 – Phone
**ADDITIONAL COUNSEL FOR
AMAZON.COM SERVICES LLC**

## CERTIFICATE OF SERVICE

      In accordance with the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of this instrument was served upon the following via certified mail, return receipt requested on March 16, 2026:

      Kristopher A. Bonham, Esq.
      MORGAN & MORGAN
      8151 Peters Rd, Suite 4000
      Plantation, FL 33324
      Telephone: (561) 812-1547
      kbonham@forthepeople.com
      precious.ramosdiaz@forthepeople.com
      **ATTORNEY FOR PLAINTIFF**

                                          */s/ Sofia A. Ramón*
                                        Sofia A. Ramón

# Exhibit D

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Nicole Pearson

## DEFENDANTS

Amazon.com Services LLC

**(b)** County of Residence of First Listed Plaintiff  Williamson County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  King County, WA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kristopher A. Bonham; Morgan & Morgan, 8151 Peters Rd, Suite 4000, Plantation, FL 33324; (561) 812-1547

Attorneys *(If Known)*

Ramon Worthington Cantu, PLLC; 1506 S. Lone Star Way, Suite 5, Edinburg, Texas 78539; (956) 294-4800

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [x] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 550 Civil Rights [ ] 555 Prison Condition [ ] 560 Civil Detainee - Conditions of Confinement | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 USC 1332
Brief description of cause:
Personal Injury

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $  at least 7,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE  3/16/2026

SIGNATURE OF ATTORNEY OF RECORD
*Sofia A. Ramon*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____